UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DIANE DUNHAM,

*Plaintiff*,

v.

WELLS FARGO BANK, N.A.,

*Defendant*.

Civil Action No.: 18-cv-08995 (PGS)(DEA)

**MEMORANDUM AND ORDER**

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant Wells Fargo Bank, N.A.'s motion for summary judgment pursuant to Fed. R. Civ. P. 56, (ECF Nos. 59, 66), and on *pro se* Plaintiff Diane Dunham's ("Plaintiff" or "Ms. Dunham") cross-motion for summary judgment pursuant to same, (ECF No. 68).[1] Oral argument was held on July 27, 2020. For the reasons set forth below and for good cause shown, Wells Fargo's motion for summary judgment is GRANTED and Ms. Dunham's cross-motion is DENIED.

**I.**

Pursuant to Fed. R. Civ. P. 12(b)(6), two prior versions of Ms. Dunham's complaints were dismissed without prejudice. (ECF Nos. 23, 52). After Ms. Dunham filed her third iteration of the complaint in January 2020, (ECF No. 56), Wells Fargo filed an answer thereto, (ECF No. 58), and, on the same day, filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), (ECF No. 59). Oral argument was held on the Rule 12(c) motion on April 16, 2020. (*See* ECF No. 63). Upon thorough evaluation of that motion, on May 14, 2020, the Court determined that consideration

---

[1] Due to Ms. Dunham's *pro se* status, it is unclear whether her recently filed papers constitute an opposition to Wells Fargo's motion for summary judgment or as her own motion for summary judgment. For the reasons stated herein, however, that distinction is immaterial because Wells Fargo's motion shall be granted.

of matters and evidence outside the pleadings may be required. (*See id*.). Accordingly, pursuant to Rule 12(d), the motion for judgment on the pleadings was converted into a motion for summary judgment and further briefing was ordered. (*Id*.). The instant motions for summary judgment followed.

## II.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and, instead, must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; S*iegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor . . . that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

### III.

In this action, Ms. Dunham is suing Wells Fargo for: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); "legal fraud/unjust enrichment" (Count III); and "equitable fraud" (Count IV). (Am. Compl., ECF No. 56). From the best the Court can glean from her pleadings and motion papers, Ms. Dunham's causes of action purportedly arise from two distinct issues: (1) Wells Fargo's alleged failure to adequately perform a title search in or about 2009, which Ms. Dunham purportedly paid Wells Fargo $7000 to perform; and (2) Wells Fargo's alleged improper charges against Ms. Dunham's escrow account in the amount of approximately $32,000, raising the total amount of her mortgage obligation from approximately $350,000 to $382,000.

Ms. Dunham's complaint and motion papers are difficult to follow. In all, the Court cannot easily identify a clear, sequential set of facts allegedly resulting in damages to Ms. Dunham. However, in light of her *pro se* status, Ms. Dunham's complaint and motion papers are held to a "less stringent standard" than those drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). It is the Court's duty to "decipher[ ] why the submission was filed, what the litigant is seeking, and what claims she may be making." *Talley v. Blue*, No. CV 19-6758 (RMB-KMW), 2019 WL 2532141, at *2 (D.N.J. June 18, 2019) (citing *Higgs v. Att'y. Gen. of the U.S.*, 655 F.3d 333, 340 (3d Cir. 2011), *as amended* (Sept. 19, 2011)).

### IV.

Ms. Dunham cannot sustain any of her causes of action against Wells Fargo as they relate to her alleged payment of $7000 for a title search because there is no documentary evidence showing that such a payment was ever made, nor has Ms. Dunham adduced any evidence that Wells Fargo agreed to undertake a title search. Accordingly, there is no genuine issue of material fact as to whether Wells Fargo breached a contract, or its implied covenants, with respect to the title search issue.

On December 23, 2005, Ms. Dunham and her then-husband, Todd Dunham, obtained a mortgage loan from World Savings Bank, FSB (a bank later acquired by Wells Fargo[2]) in the amount of $350,000, secured by their property in Middletown Township, New Jersey. (Certification of Brandon McNeal ("McNeal Cert.") Exs. A, B, ECF Nos. 66-4, 66-5). In connection with this transaction, the Dunhams executed several documents, including the Note and the Mortgage, which were recorded on January 5, 2006. (Wells Fargo's Statement of Undisputed Material Facts ("SUMF") ¶ 2).[3] Ms. Dunham also executed a U.S. Department of Housing and Urban Development Settlement Statement ("HUD-1"). (SUMF ¶ 2).

There is nothing in the Note, Mortgage, or HUD-1 indicating that Wells Fargo performed or charged for a title search in the amount of $7000. (*See, e.g.*, McNeal Cert. Exs. A, B, C).

Moreover, my review of Ms. Dunham's mortgage loan payment history does not reveal a $7000 payment for a title search. (*See* McNeal Cert. Ex. G (payment history)). Having reviewed

---

[2] As noted in the Court's August 15, 2018 Memorandum and Order (ECF No. 23), in 2007 World Savings Bank changed its name to Wachovia Mortgage, FSB, which was later acquired by and merged into Defendant Wells Fargo Bank N.A. in November 2009. *See Suser v. Wachovia Mortg., FSB*, 78 A.3d 1014, 1016 (N.J. Super. Ct. App. Div. 2013); (*see also* McNeal Cert. ¶ 10).

[3] References to Wells Fargo's Statement of Undisputed Material Facts are undisputed, unless otherwise noted. Ms. Dunham did not file a statement of material facts in connection with her purported cross-motion. (*See* ECF No. 68).

Ms. Dunham's voluminous payment history compilation from December 30, 2016 through December 31, 2019, (*see id*.), there is no payment of $7000 or explanation of that figure.  As evidence in support of same, Wells Fargo submits the Certification of Brandon McNeal, Vice President of Loan Documentation for Wells Fargo.  (*See* McNeal Cert. ¶ 1).  After reviewing Ms. Dunham's mortgage loan payment history, Mr. McNeal found that "Wells Fargo . . . never received a $7,000 payment for a title search." (McNeal Cert. ¶ 11a.).  In response, Ms. Dunham argues that she did indeed pay Wells Fargo $7000 and points the Court to her Exhibit "A", which includes her 2008 tax return, a copy of a 2008 statement from a retirement account with an unrelated bank, a letter from Wachovia dated October 24, 2008 indicating her loan application was under review, and an unsigned loan application.  (Responses to Statements of Material Fact ¶ 4, ECF No. 68).  However, upon careful review, nothing in Exhibit "A" suggests that Ms. Dunham tendered a $7000 payment to Wells Fargo to perform a title search.

Moreover, in 2008, the Dunhams were experiencing difficulties in paying their mortgage.  (*See* McNeal Cert. ¶ 11c.; Notice of Intent to Foreclose, ECF No. 1-1, p. 110 of 123).  As a result, Ms. Dunham sought and signed a Modification Agreement dated April 9, 2009.  (McNeal Cert. Ex. E).  As set forth in that Modification Agreement, Ms. Dunham agreed to capitalize all outstanding late payment fees, escrow advances, and other charges into the principal balance of the mortgage loan.  (*Id*. ¶¶ 1, 2).  As a result, the principal balance of the mortgage loan increased approximately $32,000, from its original amount of $350,000 to $382,806.40.  (*Id*. ¶ 2b.).

Again, nothing in the Modification Agreement supports Ms. Dunham's allegation that she paid Wells Fargo $7000 to conduct a title search.  (*See generally id*.).

In order to sustain a claim of breach of contract under New Jersey law, a plaintiff must establish: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."

5

*Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002). In this case, Ms. Dunham's breach of contract claim (with respect to the title search issue) fails because she has not adduced any evidence of a contract between the parties. She has not provided any evidentiary support for her contention that she paid Wells Fargo $7000 to perform a title search. As explained above, the Note and Mortgage, HUD-1, mortgage loan payment history, and Modification Agreement do not show that such a payment was tendered. Moreover, Ms. Dunham has not submitted any evidence showing that Wells Fargo performed a title search, such as a written contract, email, payment, receipt, letter, or some other acknowledgment. Accordingly, absent any genuine issue of material fact as to whether a contract existed, Wells Fargo must be awarded summary judgment on Counts I and II. *Goen Techs. Corp. v. NBTY, Inc*., No. CIV. 05-4597 (WHW), 2007 WL 2595753, at *3 (D.N.J. Sept. 4, 2007); *see also Wade v. Kessler Inst*., 172 N.J. 327, 345 (2002).

**V.**

Ms. Dunham contends that Wells Fargo improperly charged her escrow account approximately $32,000, raising the total amount of her mortgage obligation from $350,000 to approximately $382,000. (Am. Compl. at 2, ¶ 5, at 3 ¶ 7; Memorandum of Law in Support of Plaintiff Diane Dunham's Motion Summary Judgment ("Memo of Law") at 2 ¶ 5, 3 ¶ 7, ECF No. 68).[4] While her argument is unclear, Ms. Dunham seems to attribute the approximately $32,000 in "excessive" escrow charges to duplicative charges by Wells Fargo to satisfy a tax sale certificate. (*Id*. at 2 ¶ 8, 3 ¶ 7; Memo of Law at 2 ¶ 8, 3 ¶ 7). In particular, Ms. Dunham claims that Wells Fargo charged her escrow account four times to pay the "back property tax lien," and planned to do so "again for the 5th time . . . at house closing." (*Id*. at 3 ¶ 7; Memo of Law at 3 ¶ 7).

---

[4] Ms. Dunham appears to have reproduced her Amended Complaint as her memorandum of law in support of her motion for summary judgment. (*compare* ECF No. 56 *with* No. 68).

By way of background, when the Dunhams signed the Note and Mortgage on December 23, 2005, they did not set up an escrow account for the payment of taxes and insurance. (SUMF ¶ 5). In particular, the Escrow Account Agreement, dated December 23, 2005, indicates that no escrow account was established in connection with their mortgage. (McNeal Cert. Ex. D). Unfortunately, soon after executing their mortgage in 2005, the Dunhams' marriage ended. (Memo of Law 2 ¶ 7). Evidently, at the same time, their property taxes were not being paid. (*See id*.). In or around 2006, Mr. Dunham was ordered by a court to pay property taxes as part of the divorce settlement, but those taxes were never paid, and a tax sale certificate was issued on or about May 11, 2007. (*Id*.; Answer Ex. G, ECF No. 58-1). The tax sale certificate shows a property tax lien on Ms. Dunham's property in the amount of $3542.62 (Answer Ex. G).

On March 6, 2008, at the request of Ms. Dunham, Wells Fargo (then Wachovia) paid $12,619.26 to bring the real estate taxes current and, from that point on, an escrow account was established as part of her mortgage payment and Wells Fargo timely paid the quarterly property taxes. (Answer Exs. H, I; McNeal Cert. ¶ 11b., e.). For some unknown reason, the Certificate of Cancellation of Tax Sale Certificate was not timely filed, and the Collector of Taxes did not issue the Cancellation of Tax Sale Certificate until April 25, 2016, which was recorded on May 6, 2016. (Answer Exs. H, I; McNeal Cert. ¶ 11b., e.).

On April 15, 2016, Ms. Dunham sold her home for $465,000. (Answer Ex. J). Wells Fargo received the payoff for the mortgage loan, and, on April 29, 2016, the mortgage was discharged. (*See id*. Ex. K). A refund check for the surplus of funds remaining in escrow ($2058.90) was sent to Ms. Dunham on or about May 12, 2016. (*See id.* Exs. L, M).

Based on the foregoing, it is unclear why Ms. Dunham alleges that Wells Fargo improperly charged $32,000 to her mortgage and/or escrow account. There is nothing in the record to support that contention.

It is possible that Ms. Dunham's confusion emanates from the terms of the Modification Agreement, which increased the principal balance of her mortgage loan by approximately $32,000; however, the documents demonstrate that the Modification Agreement capitalized all outstanding late payment fees, escrow advances, and other charges into the principal balance of the mortgage loan. (McNeal Cert. Ex. E ¶¶ 1, 2). As a result, the principal balance of the mortgage loan increased approximately $32,000 – from the original amount of $350,000 to $382,806.40. (*Id*. ¶ 2b.).

Under these circumstances, there are no genuine issues of material fact concerning Ms. Dunham's contract-based claims, and Wells Fargo is entitled to judgment as a matter of law. As set forth above, in order to sustain a claim of breach of contract under New Jersey law, a plaintiff must establish: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico*, 507 F.3d at 203. Here, Ms. Dunham has adduced there was a contract, but has failed to show any breach or any damages. Accordingly, Wells Fargo's motion for summary judgment is granted on Counts I and II.

## VI.

Additionally, in her Amended Complaint, Ms. Dunham asserts a single claim for both "legal fraud" and "unjust enrichment" (Count III), as well as a claim for "equitable fraud" (Count IV). Ms. Dunham alleges the fraud as follows:

> Defendants represented to the Plaintiff that they did not direct or control the proper Agencies' responses to the Plaintiffs request for paid title search records and held accountable for Bank of America records in the Hall of Records of New Jersey or other records, upon which the above complaint is based. Defendants' statement was made with the purpose of inducing Plaintiff to enter into a stipulation of dismissal and dismiss any and all claims Plaintiff had against defendant. . . . The representation . . . was material to Plaintiff's willingness to enter into a stipulation of dismissal and dismiss Plaintiffs claims against

8

Defendants thereafter.

(*Id*. at 7 ¶¶ 2, 3).  While her allegations are difficult to decipher, it appears that Counts III and IV are being asserted against the dismissed defendant Bank of America, as evidenced by Ms. Dunham's contention that the fraudulent statements were intended to induce her into dismissing all claims against Bank of America.  However, Ms. Dunham agreed to dismiss with prejudice Bank of America as a defendant in this matter on March 7, 2019, (ECF No. 32), and, as such, it is no longer a party to this action.  In any event, Ms. Dunham has neither articulated any viable evidence in support of her fraud claims to deny summary judgment; nor is there a specific statement of the cause of action as the rules required. (Fed. R. Civ. P. 9).   For these reasons, Wells Fargo is entitled to summary judgment on Counts III and IV.

## VII.

Finally, and notwithstanding the foregoing, all of Ms. Dunham's claims must be dismissed because they are barred by the statute of limitations.  Under New Jersey law, Ms. Dunham's claims are subject to a six-year statute of limitations.  *N.J.S.A.* § 2A:14-1; *Peck v. Donovan*, 565 F. App'x 66, 69 (3d Cir. 2012) (breach of contract); *Clark v. Prudential Ins. Co. of Am.*, No. CIV.08-6197DRD, 2009 WL 2959801, at *19 (D.N.J. Sept. 15, 2009) (breach of the implied covenant of good faith and fair dealing); *Kretz v. Hernandez*, No. CV123152MASTJB, 2016 WL 6471444, at *3 (D.N.J. Oct. 31, 2016) (fraud).  Here, Ms. Dunham's causes of actions are based on events that occurred in or before 2009 (*i.e*., an alleged payment for a title search and $32,000 in excessive charges imposed by Wells Fargo), and, as such, her claims are barred by the six-year statute of limitations that expired in 2015.

## **O**RDER

**THIS MATTER** having come before the Court on Defendant Wells Fargo Bank, N.A.'s ("Defendant" or "Wells Fargo") motion for summary judgment pursuant to Fed. R. Civ. P. 56, (ECF Nos. 59, 66), and on *pro se* Plaintiff Diane Dunham's ("Plaintiff" or "Dunham") cross-motion for summary judgment pursuant to same, (ECF No. 68); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 18th day of September, 2020,

**ORDERED** that Defendant's motion for summary judgment, (ECF No. 59, 66), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment, (ECF No. 68), is **DENIED**; and it is further

**ORDERED** that the Clerk's Office is directed to close this case; and it is further **ORDERED** that the Clerk's Office is directed to mail a copy of this Memorandum and Order to Ms. Dunham.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.